[L. A. No. 2451. In Bank.—September 8, 1910.]

## FRANCES AUGUSTA JUDD, Respondent, v. ARTHUR LETTS, Appellant.

MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANT—EMPLOYER'S LIABILITY UNDER AMENDMENT OF 1907 TO SECTION 1970 OF CIVIL CODE—DIFFERENT DEPARTMENTS OF LABOR.—Under section 1970 of the Civil Code, as amended in 1907, (Stats. 1907, p. 119), the previously existing "fellow-servant rule," which relieved an employer from liability for injury to an employee caused by the negligence of a co-employee, is abrogated as to all classes of employers, in cases

where the employee injured and the one at fault are engaged in different departments of labor. The amendment is remedial in character, and should be construed liberally with a view to carrying out its object.

ID.—CONSTRUCTION OF PHRASE "DEPARTMENT OF LABOR."—In the absence of a legislative definition of the phrase "another department of labor," as used in the amendment, that expression must be construed by the courts according to the ordinary significance of the words used, taken in connection with the apparent purpose of the enactment.

ID.—TESTS OF IDENTITY.—While it is difficult, if not impossible, to define the phrase "department of labor" in such terms as to furnish an exact test by which to determine, on any given state of facts, whether two employees are in different departments, still, in a general way, the question of identity of department is to be determined by inquiring, among other things, whether the employees in question are habitually associated or brought together in the performance of their duties, whether they are under the immediate direction and control of the same superior, and whether the duties of one have any relation to or connection with those of the other.

ID.—QUESTION OF IDENTITY WHEN FOR COURT OR JURY.—Where the facts are disputed, or, if undisputed, are such as to reasonably permit contrary inferences, the jury should be permitted to determine whether the servants were engaged in the same department of labor. But where the facts are such that reasonable minds could not differ as to the conclusion, the question becomes one of law for the court.

ID.—RETAIL DEPARTMENT STORE—EMPLOYEE IN SELLING DEPARTMENT—ELEVATOR OPERATOR.—An employee in a retail department store, whose only duties were those connected with the sale of cloaks and suits, but who was permitted, for her convenience, to use an elevator in going from her place of work to the dressing room, was not engaged in the same department of labor with the person operating the elevator, and the court was justified in so instructing the jury as matter of law.

ID.—IMMATERIAL EVIDENCE AS TO DIVISION OF STORE IN DEPARTMENTS.—In an action by such an employee to recover for personal injuries occasioned by the negligence of the elevator operator, the question of identity of department of labor was material only in so far as it affected their respective employments, and it was immaterial that witnesses, over the defendant's objection, were permitted to testify that his store was organized in various departments, such as a clothing department, a grocery department, and others.

ID.—EVIDENCE OF SIMILAR STATEMENTS BY UNIMPEACHED WITNESS.—A party cannot support the unimpeached testimony of his own witness by proof that the witness had made similar statements out of court at another time.

ID.—MISCONDUCT OF JURY—SUGGESTION AS TO VIEW OF PREMISES—NEW TRIAL.—The fact that one of the jurors, during the trial, suggested

that the jury be sent to view the elevator, and that others manifested their assent to the suggestion by nodding their heads, was not such misconduct on their part as to warrant the granting of a new trial.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Lawler, Allen, Van Dyke & Jutten, and R. P. Jennings, for Appellant.

Jones & Drake, for Respondent.

SLOSS, J.—The plaintiff recovered a judgment for personal injuries. The defendant appeals from the judgment and from an order denying his motion for a new trial.

The defendant conducted, in the city of Los Angeles, a retail store known as the "Broadway Department Store." The business was carried on in a four-story building. Three passenger elevators were operated therein for the use of customers and employees of the defendant. On February 21, 1908, the plaintiff, who was employed by defendant in the ladies' suit department, on the second floor of said store, had occasion, after completing her day's work in that department, to ascend to the fourth floor, where she had left her hat and other belongings at a place provided for that purpose. One of the elevators stopped at the second floor, and plaintiff entered it. The operator started to ascend, and, before the next floor had been reached, the plaintiff's left leg was in some way drawn between the elevator and the shaft and casings thereof, inflicting serious injuries upon her. The contention of the plaintiff was that the mishap was caused by the negligent action of the elevator operator, in closing the door of the elevator too soon after plaintiff's entrance, thereby catching her dress in the door. He then, as was claimed, started the elevator upward before plaintiff's dress could be released. There was testimony in support of this theory and the jury, as appears from its verdict, accepted such testimony as true. This court cannot, therefore, under its settled rule regarding conflicting evidence, give favorable consideration to the appel-

lant's contention that the finding of negligence on the part of the elevator operator is without support.

The principal point of controversy arises over the following instruction given to the jury: "Although you may believe from the evidence that the servant of the defendant, who was operating the elevator at the time in controversy here, was a co-employee with the plaintiff in the general business of operating defendant's Broadway Department Store, yet you are instructed that he was engaged in another department of labor from that of the plaintiff, and, as a matter of law, the negligence, if any, of the servant operating the elevator was the negligence of the defendant." The correctness of this instruction depends upon the interpretation to be given to section 1970 of the Civil Code, as amended in 1907. (Stats. 1907, p. 119.) Prior to 1907, the section read as follows: "An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless the negligence causing the injury was committed in the performance of a duty the employer owes by law to the employee, or unless the employer has neglected to use ordinary care in the selection of the culpable employee." The amendment added this proviso: "provided, nevertheless, that the employer shall be liable for such injury when the same results from the wrongful act, neglect or default of any agent or officer of such employer, superior to the employee injured, or of a person employed by such employer having the right to control or direct the services of such employee injured, and also when such injury results from the wrongful act, neglect or default of a co-employee engaged in another department of labor from that of the employee injured, or employed upon a machine, railroad train, switch-signal point, locomotive engine, or other appliance than that upon which the employee is injured is employed, or who is charged with dispatching trains, or transmitting telegraphic or telephonic orders upon any railroad, or in the operation of any mine, factory, machine shop, or other industrial establishment. . . ." While the proviso is framed in a manner that may leave a doubt concerning the proper relation of some of the phrases, we think it quite clear that

the intent of the amendment was to take from all classes of employers the benefit of the fellow-servant rule, in cases where the employee injured and the one at fault are engaged in different departments of labor. The appellant argues that the concluding words of the proviso "upon any railroad, or in the operation of any mine, factory, machine shop or other industrial establishment" qualify all the preceding clauses following the words "and also." So arguing, he claims that the Broadway Department Store is not a railroad, mine, factory, machine shop, or other industrial establishment and that, therefore, the "department of labor" exception has no application. There is no rule of grammatical construction which requires that the final clause be given the effect claimed. The interpretation thus urged would, we think, unduly limit the effect of the proviso.

This brings us to a consideration of the meaning of the phrase "another department of labor." The general rule exempting employers from liability for injuries sustained by one servant through the negligence of another servant in the same common employment has been declared, in the absence of any statute on the subject, by all the courts applying the doctrines of the common law. The decisions are by no means in accord with respect to the fundamental reason or basis for the rule, and this phase of the subject has called forth the expression of a multitude of varying views. With a discussion of these we need not here concern ourselves. So, too, the courts have differed in their attempts to define the relation of common service. In the absence of any statutory limitation of the doctrine, there have been in some jurisdictions decisions denying to the employer exemption in cases where the injured employee and the one whose negligence was asserted were not "consociated" in the same "department," or "line of employment." (*Chicago etc. R. Co.* v. *Moranda,* 93 Ill. 302, [34 Am. Rep. 168] ; *R. R. Co.* v. *Carroll,* 6 Heisk. (Tenn.) 347; *Union Pac. R. R. Co.* v. *Erickson,* 41 Neb. 1, [59 N. W. 347] ; *Relyea* v. *R. R. Co.,* 112 Mo. 86, [20 S. W. 480].) In this state no such modification had ever, prior to the amendment of section 1970, been recognized. That section, as it formerly stood, was regarded as declaratory of the common law (*Congrave* v. *Southern Pacific R. R. Co.,* 88 Cal. 360, [26 Pac. 175]), and, under its terms, a common employment existed when each of the

servants in question was employed "in the same general business." (*Mann* v. *O'Sullivan,* 126 Cal. 61, [77 Am. St. Rep. 149, 58 Pac. 375].)

It would seem clear, from these considerations, that the purpose of the amendment to section 1970 was to modify, in the interest of those employed, the rigor of the rule which, in many cases, denied them relief for loss or injury sustained without their fault. The enactment is remedial in character, and should be construed liberally with a view to carrying out the object sought. Such appears to have been the tendency of the courts in dealing with similar statutes. (2 Labatt on Master and Servant, sec. 639.) Referring to a statute which used the expression "branch or department," the supreme court of Ohio said: "The section, however, makes no attempt to define the terms 'department' or 'branches,' but these terms should not be limited so as to embrace merely those large divisions created for convenience in administering the affairs of the company. On the contrary, it is more reasonable to suppose that they relate to those minute ones which concern the daily duties of the employees." (*Cincinnati etc. R. R. Co.* v. *Margrat,* 51 Ohio St. 130, [37 N. E. 11].) The term "department of labor" used in our statute has, in like manner, failed to receive definition at the hands of the legislature, and must, therefore, be construed by the courts according to the ordinary significance of the words used, taken in connection with the apparent purpose of the enactment. In seeking the intent of the amendment, we are not so closely limited as is a court which undertakes, without legislative sanction, to restrict the operation of the fellow-servant rule. In those jurisdictions which, by force of judicial declaration alone, refused the benefit of the rule where employees were engaged in different departments, it may well have been thought necessary to interpret the phrase "different departments" narrowly. In undertaking, without statutory sanction, to limit the scope of a doctrine of general application, the courts naturally proceed with more caution than would be appropriate where the limitation has been made a part of the policy of the state by express legislative declaration. While the decisions of the courts which, of their own motion, enunciated the so-called "department rule" are instructive, they are not conclusive here, and we shall not undertake to review them,

or to declare whether they tend to support the appellant's
contention.

It would be difficult, if not impossible, to formulate a defi-
nition of the phrase "department of labor" in such terms as
to furnish an exact test by which to determine, on any given
state of facts, whether two employees are in different depart-
ments. In a general way, it may be said that the question
of identity of department is to be determined by inquiring,
among other things, whether the employees in question are
habitually associated or brought together in the performance
of their duties, whether they are under the immediate direc-
tion and control of the same superior, and whether the duties
of one have any relation to or connection with those of the
other. Where the facts are disputed, or, if undisputed, are
such as to reasonably permit contrary inferences, the jury
should be permitted to determine whether the servants were
engaged in the same department of labor. But where the
facts are such that reasonable minds could not differ as to
the conclusion, the question becomes one of law for the court.
(2 Labatt on Master and Servant, secs. 494, 504; *Chicago &
E. I. R. R. Co.* v. *Driscoll,* 176 Ill. 330, [52 N. E. 921]; *Swad-
ley* v. *M. P. R. R. Co.,* 118 Mo. 268, [40 Am. St. Rep. 366, 24
S. W. 140]; *MacCarthy* v. *Whitcomb,* 110 Wis. 113, [85 N. W.
707].) In *Morgan* v. *J. W. Robinson Co.,* 157 Cal. 348, [107
Pac. 695], the only case in which we have had occasion to
consider the effect of the amendment to section 1970, the court
had no hesitation in declaring that, as matter of law, the
employees there involved, (i. e., a carpenter engaged in the
construction of a building and a man operating a freight
elevator used in a retail store) were engaged in different de-
partments of labor. We are satisfied that the same result
must be reached on the facts here shown. The plaintiff's only
duties were those connected with the sale of cloaks and suits.
The operation of the passenger elevator was an entirely sep-
arate and distinct branch of service. There was no relation
between the two beyond the fact that, at the close of her day's
service, the plaintiff was permitted, for her convenience, to
use the elevator in going from her place of work to the
dressing-room. It could not be said that she and the elevator
boy were engaged in the same department of labor without
perverting the ordinary meaning of words and destroying the

effect of the amendment. The court rightly instructed the jury with reference to this point.

The other errors assigned by the appellant are of slight importance and will be briefly discussed. Plaintiff, and other witnesses, were permitted, over defendant's objection, to testify that there were various departments in defendant's store, such as a clothing department, a grocery department, a jewelry department, and others. This testimony, if inadmissible as calling for the conclusion of the witness, could not have prejudiced the appellant. In the first place, the fact stated·was obvious enough from the mere title—Broadway Department Store—given by defendant to his establishment. Furthermore, the question of identity of department was material only in so far as it affected the employment of plaintiff and of the elevator operator. Whether other classes of employees were engaged in different departments were of no consquence whatever.

Mrs. Mary Greathouse was called as a witness on behalf of the defendant and testified, in effect, that plaintiff's skirt had not been caught in the elevator door. On cross-examination she stated that she had, at the instance of the defendant, made an affidavit stating how the accident occurred, and that, in that affidavit, she had not said that she had been unable to see whether the dress was caught or not, but, on the contrary, had said that everything was clear. Thereupon the defendant, at the request of plaintiff's attorneys, produced the affidavit.· The plaintiff's attorneys inspected it but did not offer it in evidence. On redirect examination the defendant sought to introduce the paper in evidence, and plaintiff's objection to the offer was sustained. The ruling was correct. If the affidavit had conflicted with the witness's testimony at the trial, the paper might, after proper foundation laid, have been introduced by the adverse party, but this would have been permissible for the purpose of impeachment only. It was not so introduced, and the defendant could not support the unimpeached testimony of his own witness by proof that she had made similar statements at another time. Such statements, made out of court, were clearly incompetent.

Finally, the appellant urges that a new trial should have been granted for misconduct of the jury. During the trial, one of the jurors suggested that the jury be sent to view the

elevator, and added that he had talked with some of his associates and that several of them were of the same mind. Further inquiry drew from the juror in question the explanation that, while one of the attorneys was drawing a diagram, he, the juror, had said that he would rather see the elevator, whereupon one or two of his associates "merely nodded a head." This appears to have been all that occurred. After discussion between court and counsel, in the absence of the jury, the court ruled against defendant's contention that there had been misconduct. It would be rather extreme to hold that the action complained of constituted a violation of duty on the part of the jurors, under section 611 of the Code of Civil Procedure. But if it did, it is impossible to see how the formation or the expression of a desire to view the premises could have prejudiced either party in the slightest degree. (*People* v. *West,* 73 Cal. 345, [14 Pac. 848]; *People* v. *Kramer,* 117 Cal. 647, [49 Pac. 842].)

The judgment and the order denying a new trial are affirmed.

Angellotti, J., Shaw, J., Henshaw, J., and Melvin, J., concurred.

Rehearing denied.