[Crim. No. 3656. Second Dist., Div. Two. Jan. 14, 1943.]

In re CHARLES MAKI, on Habeas Corpus.

Perry G. Briney for Petitioner.

638

Ray L. Chesebro, City Attorney (Los Angeles), W. Jos. McFarland, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

MOORE, P. J.—The question for decision in this case is whether a city ordinance is valid which forbids the administration of a massage to a person of the opposite sex unless done under the supervision of a licensed physician.

Petitioner having been convicted by the Municipal Court of Los Angeles obtained a writ of habeas corpus upon his petition which disclosed that a former judgment of dismissal had been reversed by the appellate division of the superior court. The ordinance in question is section 27.03.1, Los Angeles Municipal Code, and is as follows:

"(a) It shall be unlawful for any person to administer, for hire or reward, to any person of the opposite sex, any massage, any alcohol rub or similar treatment, any fomentation, any bath, or any electric or magnetic treatment, nor shall any person cause or permit in or about his place of business, or in connection with his business, any agent, employee or servant or any other person under his control or supervision, to administer any such treatment to any person of the opposite sex.

"(b) This section shall not apply to any treatment administered in good faith in the course of the practice of any healing art by any person licensed to practice any such art or profession under the provisions of the Business and Professions Code of California or of any other law of this state."

In considering the language of that section it will be borne in mind that section 27.03 of the same code forbids any person to give a massage, rub, magnetic treatment, etc., unless he shall have received from the city a permit to conduct such pursuit at the location named in the permit. Subdivision (f) of such section contains the following provision: "No person engaged in any business mentioned in this Section shall permit any person in his place of business to treat or perform any act for which such permit was granted upon any patient or customer of the opposite sex."

Petitioner's attack upon section 27.03.1 is based upon five grounds, viz.:

(1) It violates section 18, article XX of the Constitution;

(2) It unreasonably infringes upon the right of contract;

(3) It violates section 21, article I of the Constitution in that it grants special privileges and immunities;

(4) It deprives petitioner of a property right without due process of law (§ 13, art. I, Const.) ;

(5) It denies equal protection of the laws, in violation of the Fourteenth Amendment.

 (1) Section 18 of article XX is not violated. It declares that "no person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation, or profession." Petitioner's right to engage in the vocation of a masseur is not questioned. It was not his occupation that brought him to the attention of the police but rather his disregard of a regulation of such occupation, properly imposed by the municipality. In no sense does the ordinance challenge the right of either man or woman to work as a massagist or to operate such business. From the agreed statement of facts upon which petitioner was convicted it appears that he was "and still is the owner of and conducting a steam bath and massage business." The ordinance was violated when petitioner called in his masseuse to administer a massage to a male patron. Had petitioner himself proceeded with the massage no warrant would have been issued or complaint filed. He could not assign to his masseuse the performance of a task which she was forbidden by the ordinance to do and then in his own defense plead the nullity of the measure because it violates the rights of his employee as guaranteed by section 18. He has no right to complain upon that ground. (*People* v. *Steelik*, 187 Cal. 361, 375 [203 P. 78] ; *Virginia Ry. Co.* v. *System Federation No. 40*, 300 U.S. 515 [57 S.Ct. 592, 81 L.Ed. 789].)

The ordinance applies alike to both men and women. If petitioner should receive only male patrons and do his own work or employ only masseurs, he would not violate the ordinance. If he should receive only female patrons and employ only masseuses to do his work, there would be no violation. The barrier erected by the ordinance against immoral acts likely to result from too intimate familiarity of the sexes is no more than a reasonable regulation imposed by the city council in the fair exercise of police powers. (*Matter of Application of Miller*, 162 Cal. 687 [124 P. 427].) Petitioner vainly relies upon *Matter of Maguire*, 57 Cal. 604 [40 Am. Rep. 125] (1881), which held that an ordinance excluding a female from attendance in a barroom was an evasion of section 18. That decision was overruled in 1893 by *Ex parte Hayes*, 98 Cal. 555 [33 P. 337, 20 L.R.A. 701], wherein the

Supreme Court declared that section 18, article XX does not limit the power of the state to prescribe conditions in regulating the conduct of a retail liquor business.

In testing the legislative judgment with respect to the necessity for the enactment of regulatory laws in the absence of a judicial determination to the contrary, the presumption is that the city council's action was supported by known facts requiring the enactment. (*South Carolina State Highway Dept.* v. *Barnwell Bros.*, 303 U.S. 177 [58 S.Ct. 510, 82 L.Ed. 734].) Such presumption demands but little application here. The inclination of a percentage of mankind to ignore conventionalities, moral codes and inhibitory statutes and to indulge in licentious practices arising from the sex impulse is too well known to the student of history and sociology to require extended discussion. They have been prohibited in every land of recorded history from ancient Babylon (Code of Hammurabi) to the present time. The evil became so grave a menace to the welfare of the early Saxon state in Britain that our rude forebears made adultery a capital offense (Taine's History of English Literature). By reason of the continued presence of such element whose lack of restraint would, by subverting the common morality, weaken the foundations of an approved social order, the Legislature may suppress the practice deemed inimical to the state and may adopt such measures as may be reasonable to effectuate its purpose. (*Purity Extract & T. Co.* v. *Lynch*, 226 U.S. 192 [33 S.Ct. 44, 57 L.Ed. 184] ; *American Linseed Oil Co.* v. *Wheaton*, 25 S.D. 60 [125 N.W. 127, 41 L.R.A. N.S. 149].) Moreover, the fact that a particular transaction considered apart from the menace sought to be prevented may be innocuous, does not immunize it from the prohibition contained in the enactment. Since the ordinance in question does not prohibit either man or woman from engaging in the occupation of the masseur but merely regulates the conduct of a business in the interest of the state, there is no infraction of article XX of the Constitution.

(2) The assignment that the city ordinance unreasonably infringes upon the right of contract has no substantial basis. Merely because the practice of administering the massage is in itself an innocent and worthy vocation and fulfills a popular demand of the ill and the injured is not a sufficient reason to deny the reasonable exercise of the police power. Notwithstanding the ordinance, petitioner may occupy his entire time massaging men for reward or otherwise; may

employ any masseuse to massage any woman requesting such treatment; may employ, or permit, any person to work in his establishment so long as such person observes all regulatory statutes and ordinances and refrains from massaging persons of the opposite sex. Neither the state nor the federal Constitution guarantees to a person the unrestricted privilege of conducting his own business as he pleases. The state may condition the right to conduct a business or to pursue a calling. (*Nebbia* v. *New York*, 291 U.S. 502, 527 [54 S.Ct. 505, 78 L.Ed. 940].) Such is the burden of him who would practice law, medicine, dentistry or optometry; who would operate a railroad, grain elevator, compress, hospital, dairy or garbage collection. The very guaranty of our liberties surrounds us with restrictive safeguards and subjects us to scrutiny and control from birth to the grave. However, regulatory laws must not be the fruitage of caprice or of personal enmity or of a zeal to serve a private interest. (*Miller* v. *Wilson*, 236 U.S. 373, 380 [35 S.Ct. 342, 59 L.Ed. 628].)

 (3) Petitioner contends that the ordinance violates section 21 of article I of the Constitution which forbids that "any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." Those to whom special privileges are granted by the ordinance, asserts petitioner, are licensed physicians and their employees, in that those permitted to give massages are not selected upon the basis of their qualifications; that anyone may do so if he asks no reward for his service or if he is supervised by a licensed physician; that anyone may administer a massage so long as a masseur treats a man and a masseuse treats a woman; that a man may be treated by a masseuse and a woman by a masseur at the office of a physician. Such discrimination, argues petitioner, is not based upon some "natural, intrinsic or constitutional distinction." (Citing *Gaetana Bocci & Sons Co.* v. *Lawndale,* 208 Cal. 720 [284 P. 654].)

We find no violation of section 21 in the language of the ordinance. The physician is granted no special privilege thereby. He qualifies himself for such responsibility by his allegiance to time honored ethical standards as well as by complying with the requirements of the state in gaining the knowledge and skill which qualify him to administer to the human body. The physician is obligated not only to adhere to the application of the most advanced methods and reme-

dies in the art of healing but also to scorn immoral behavior and to denounce licentious practices. But not even he may act arbitrarily. He may cause a massage to be given only to those who in good faith seek his professional ministrations. The very act of the state in granting licenses to those only who are qualified as physicians is itself an attempt to prevent the quack and the charlatan from preying upon the unsuspecting public. There is, therefore, a distinction in the moral trustworthiness of the licensed physician, as a class, and the massagist. The latter has no professional standards to uphold. His endeavors are activated by only a personal zeal to promote his own prosperity.

■ Since the physician is licensed by the state, the city is powerless to prohibit or to regulate his practice. But this does not deprive a municipality of regulating the conduct of those not licensed under general laws. ■ Also, because the city council in finding the necessity for an enactment to regulate massage studios, did not comprehend every possible situation for evil, its ordinance in selecting only one class of cases is not to be thereby defeated. ''It may confine its restrictions to those classes of cases where the need is deemed to be clearest.'' (*West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379, 400 [57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330] ; *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 689 [151 P. 398].) ■ Municipal authorities and not the courts are to determine whether local conditions demand such legislation and they are vested with a large discretion not to be judicially controlled unless clearly violative of the organic law. (*In re McNeal,* 32 Cal.App.2d 391 [89 P.2d 1096].) ■ Neither may a violator defeat his conviction because evils of a different but more pernicious character have not also been regulated (*Ex parte Hixson,* 61 Cal.App. 200, 213 [214 P. 677].) The fact that psuedo masseuses and other disreputable persons give massages gratis and are not included within the inhibition does not operate to defeat the ordinance. The city council is presumed to have considered facts presented by officials who in the course of official duty assembled the data bearing upon the evils subsisting by virtue of the giving of massages. It was the legislative function to determine that regulatory measures should be confined to those places where massages are given for hire. From any view of the ordinance we find no special privilege conferred or immunity granted.

■ (4) The fallacy of petitioner's argument that the or-

dinance deprives him of his property without due process of law will already have occurred from the foregoing discussion. ▮ The reasonable exercise of the police power in regulating any occupation in order to maintain the moral welfare does not arbitrarily deprive a person so engaged of his property. ▮ The language of the ordinance and the evils intended thereby to be prevented make it clear that the intent of the city council was solely to serve the public welfare and not to oppress any class. ▮ The fact that a person by his occupation may be unable to gain certain profits as a result of the enforcement of regulatory measure is not a deprivation of his property without due process of law. Enactments that curb the vicious or restrain the wicked necessarily restrict the emoluments of his enterprise. However, such results are not to be considered in determining the validity of a law.

▮ Rather are we impelled by the necessity of determining the intent of the lawmakers and whether that intent violates an established right. The likelihood that licentiousness may result from the intimate contact of members of opposite sexes in the secrecy of the treatment chamber is a necessary factor in considering whether the ordinance is an intelligent and serious effort to regulate the occupation of maintaining a massage parlor. (*Rose* v. *Superior Court,* 80 Cal.App. 739, 746 [252 P. 765].) ▮ It is our duty so to interpret the ordinance as to render the legislative intent valid and operable, (*Ex parte Haines,* 195 Cal. 605, 621 [234 P. 883]) and diligently to seek for such intent. (*Marshall* v. *Williams,* 85 Cal. App. 507, 511 [259 P. 970] ; *Carr* v. *Kingsbury,* 111 Cal.App. 165, 171 [295 P. 586]; § 3541, Civ. Code.) We are not frozen to an interpretation that follows strictly the dictionary definition of the words used. (*Patton* v. *Los Angeles-Pacific Co.,* 18 Cal.App. 522 [123 P. 613].) As far back as 1896 (*Dunlop* v. *United States,* 165 U.S. 486, 498 [17 S.Ct. 375, 41 L.Ed. 799]) it was found that licentious acts were so prevalent in massage establishments that an advertisement by women inviting men to their ''Baths'' and ''Massage'' rooms was held to be an obscene publication because it was calculated to deprave the morals. ▮ But it is unnecessary to support the wisdom of the city council by the history of the conditions of ancient days or of the gay nineties. Respondent points out that in the city of Los Angeles, in 1915, the prevalence of sex evils arising out of massage parlors caused the city council then to enact section 27.03, *supra,* as a safeguard

against the deterioration of the social life of the community. Petitioner contends that because pseudo-massagists and kindred fakers debase a creditable business by screening themselves with the insignia of an honorable vocation to conceal their crimes he and his fraternity of ethical and moral operatives and operators should not be subjected to regulations designed to prevent immoral acts. The finding by the legislative body that the existence of an evil in connection with any business or occupation is widespread is a sufficient answer to the complaint of one therewith engaged notwithstanding that he himself is honorable and decent in the conduct of his own concerns. He is not deprived of his property because he must conform to such regulations. His own compliance with such measures is both a privilege of citizenship and a protection against evils otherwise surreptitiously imported.

(5) There is nothing in the ordinance that denies the equal protection guaranteed by the Fourteenth Amendment. It applies to all alike who give massages for hire and who are not licensed to practice one of the arts of healing. An ordinance is not discriminatory so long as the distinctions it makes relate reasonably to the object of the legislation. It is not arbitrary if any reasonably conceivable state of facts would sustain it. (*New York Rapid Transit Corp.* v. *City of New York,* 303 U.S. 573, 578 [58 S.Ct. 721, 82 L.Ed. 1024].) The ordinance does not attempt to regulate the practice of licensed physicians. If it did so, it would of course be void for entering that domain in which general laws hold sway. (*Ex parte Daniels,* 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172].) Neither the operation of a massage parlor nor the administering of a massage for remedial or hygienic purposes is the practice of medicine. The massage, that is rubbing or stroking the body for remedial benefits, is practiced by every mother in the land in the normal care of her children. Because it puts the infant to sleep or relaxes the fatigued laborer does not place it in the category of the arts of the physician any more than does applying hot towels to an aching back or an ice pack to a bruised body. There is no law that classifies the application of homely remedies as a practice of medicine. Since the massage, then, is not the practice of medicine, the regulation by ordinance of those places maintained in metropolitan centers for the purpose of administering such treatments does not discriminate against the proprietors of such establishments.

It is therefore ordered that the writ be and it is hereby discharged and the prisoner is remanded.

Wood, (W. J.), J., and McComb, J., concurred.