## BUTZBACH *v.* SIRI ET AL.

No. 2870

December 5, 1931.                              5 P. (2d) 533.

*W. M. Kearney* and *Sidney W. Robinson*, for Appellant:

*G. Gunzendorfer, Wm. McKnight* and *Ayres, Gardiner & Pike,* for Respondents :

## OPINION

By the Court, COLEMAN, C. J.:

This is an action to recover possession of a certificate or certificates for 350 shares of stock in Sanitary French Bakery, Inc.

The complaint alleges that Frederick Butzbach died testate on January 25, 1925, and that Marie Butzbach is the qualified and acting executrix of his estate. It further alleges that at the time of his death the deceased was the owner of 350 shares of stock in said company, evidenced by one or more certificates of stock; that the defendant Siri unlawfully obtained possession of said certificate or certificates and still unlawfully retains the same; that the defendant corporation has at the instance of defendant Siri wrongfully and unlawfully canceled in and upon its books and records the certificate or certificates evidencing said 350 shares of stock issued to the deceased, and has issued in lieu thereof to said Siri, or to his representative, a certificate of stock therefor, and wrongfully; and that defendant corporation had actual knowledge that said certificate or certificates for said 350 shares of stock were owned by the deceased. It is further alleged that large sums of money have accrued as earnings upon said stock, which have been wrongfully paid to defendant Siri or others.

Defendants by their answer admit that a certificate of stock in defendant company was made out to Frederick Butzbach for 350 shares of stock in said company,

but denies that the same was ever fully issued or delivered.

For an affirmative defense to the cause of action pleaded in the complaint the defendants allege the corporate existence of defendant company; that said Frederick Butzbach subscribed to stock therein to be delivered upon the payment of the subscription price thereof; that the said Butzbach paid none of his subscription for said stock; that Frederick Butzbach, the president of said company, having obtained possession of the stock books of the company, wrote out certain certificates of stock, among which was one to himself for 350 shares; that the secretary of the company did not affix her signature thereto until a later date, nor did she at any time affix the seal of the company thereto or deliver said certificate; that the secretary of the company delivered said certificate to defendant Siri to be held by him as collateral security for money due him from said Butzbach, deceased, as well as for money due the defendant company from said deceased, covering the subscription price of said stock and for money otherwise due the company; that no part of said moneys due from said Butzbach has been paid.

The defendants further plead a judgment in favor of G. L. Siri and against Marie Butzbach as executrix, in the sum of $3,786.56, that execution issued thereupon, and that in due course the sheriff sold all the right, title, and interest of the said Marie Butzbach, as executrix, in and to said 350 shares of stock, to one M. T. Doyle.

Plaintiff filed a reply denying: (1) The allegation of the answer to the effect that the certificate for the 350 shares of stock was not delivered to Butzbach, deceased; (2) that the certificate of stock is held by G. L. Siri for any purpose alleged in the answer; and (3) every other allegation of new matter inconsistent with Butzbach's ownership of said stock.

■ Upon the conclusion of plaintiff's case in chief, counsel for defendants made a motion for a nonsuit. This having been denied, defendants presented their case. By presenting their case, defendants waived the

right to now insist that the nonsuit should have been granted. Franklin v. Burris, 35 Colo. 512, 84 P. 809; Parker v. Wash. Tug & B. Co., 85 Wash. 575, 148 P. 896; Busack v. Johnson, 129 Minn. 364, 152 N. W. 757; Yelloway v. Garretson (Colo.), 3 P. (2d) 292; 7 Stand. Ency. Proc. 686.

There are two primary questions in this case: (1) Did Butzbach ever become the owner of the 350 shares of stock for which he subscribed? and (2) If he did become such owner, was the stock pledged by him to Siri to secure the payment of an indebtedness?

■ The trial court held that Butzbach paid for the stock and that he did not pledge it to Siri.

The defendant Siri occupies a very peculiar position in this litigation, an antagonistic one. So antagonistic that his entire case is weakened very materially as to both of his main contentions.

He first swears, in his complaint and on the witness stand, that Butzbach never became the owner of the stock nor had it in his possession, and next swears that Butzbach pledged the stock to him to secure an indebtedness. Which of his contentions is true, if either? Certainly both cannot be true, and it may be that neither are.

As to the first proposition, it seems that the finding of the court is established by the evidence of Siri himself. He testified in part as follows, in response to inquiries by his attorney:

"Q. In other words, you advanced him (Butzbach) the money on his note to take up his subscription for corporate stock under his original subscription, is that the whole of it? A. Yes, sir. * * *

"Q. Now, Mr. Siri, did you advance the money to the bakery or put the money in the business, or did you give it to Mr. Butzbach? A. Well, I put it in the business.

"Q. You did not advance the money directly to Mr. Butzbach? A. No, sir.

"The Court: I guess the Court will have to determine that. He did take Butzbach's note so he must have advanced it for him as an individual loan.

"Mr. Kearney: That is true.

"The Court: That bought the stock for Butzbach. No question about that.

"Mr. Kearney: But he held the stock until it was paid for. That is the point.

"The Court: But he owes this man this note. It is not paid.

"Mr. Ayres: That is my contention.

"Mr. Kearney: We have never denied that.

"The Court: Well, what are you fussing about then?

"Mr. Kearney: We are fussing that that stock can not be taken from us until that note is paid for because that stock was held by Mr. Siri until it was paid for. * * *

"Q. That is you gave him a credit of a thousand dollars? A. Yes.

"Q. And then took his note for $2500.00? A. Yes.

"Q. Which made a total of $3500.00? A. Yes.

"Q. The payment for the original subscription to stock, which was 350 shares, is that the way that $3500.00 was taken up? A. Yes.

"Q. I mean that amount of stock was paid for? A. Yes."

Thus it appears from the testimony of Siri himself that he took Butzbach's note in payment of the stock and paid the money to the company or put it into the business. In this manner the stock became the property of Butzbach, and he became indebted to Siri. The trial court so found, and the evidence supports the finding.

We now come to the question of whether or not Siri held the stock as collateral to secure Butzbach's note. The trial court held that he did not.

The evidence on the point under consideration is conflicting. There was persuasive evidence in favor of defendant's theory, but the trial court saw and heard the witnesses and observed their demeanor on the witness stand.

In the sworn answer of the defendants, as we have pointed out, Siri contended that no stock had been issued

and delivered to the deceased. In the next breath, in his affirmative answer, he averred that the secretary of the company delivered said certificate to him as security. Furthermore, in an affidavit in another suit he swore that he had no security for the note mentioned.

In view of this situation, we can imagine no theory upon which it can be seriously urged that we should overthrow the findings and judgment of the trial court.

■ It is settled law in this state that, if there is a substantial conflict in the evidence, the findings and judgment of the trial court will not be disturbed. Dixon v. Miller, 43 Nev. 280, 184 P. 926; Moore v. De Bernardi, 47 Nev. 33, 213 P. 1041, 220 P. 544.

■ But it is contended that the interest of deceased in the stock was sold under the judgment mentioned; hence the decree ordering the delivery of the stock to the plaintiff was erroneous and must be reversed.

It is provided in section 9715, Nev. Comp. Laws 1929, that, if an action be pending against a deceased person at the time of his death, no recovery shall be had therein unless proof is made of the filing of a claim in the matter of the settlement of his estate; and section 9717, Nev. Comp. Laws, 1929, provides that in case a judgment is rendered in such a suit a certified copy of the judgment shall be filed in the estate proceedings, and that no execution shall issue on said judgment.

Under this section it clearly follows that the sale was unlawful, without force and effect, and did not cut off the interest of the estate of deceased in the stock in question.

■ Counsel for appellant contends that the ruling of the trial court amounted to sustaining a collateral attack on a judgment, which could not be done in the circumstances. We do not so view it. There was no attack on the judgment, but on the sale.

Counsel for appellant devotes much time and many authorities to the proposition that the lien of a pledge is not waived by a suit on the original obligation, as well as on other points of law.

As we read the pleadings, the evidence and findings

of the court, the question of a waiver of a lien is not involved in the case. It was the theory of the plaintiff that there had been no pledge, and the court so found; hence the question of waiver is not in the case.

■ Counsel for appellant contends that the court erred in giving time to reply to the supplemental answer. If the court did err, which we do not decide, it was without prejudice, for the reason that the sale alleged therein was void, as pointed out above.

■■ We think there is no merit in the contention that the court erred in sustaining an objection to a question asked Marie Butzbach on cross-examination relative to a note alleged to have been shown Siri by her. This matter was not touched upon on the direct examination, and was not cross-examination. The court has a wide discretion in such matters, and, unless it abused its discretion, which we cannot say that it did, its ruling must stand.

We find no prejudicial error in the record. The judgment is affirmed.