OLIVIA J. CAYE, Appellant, *v.* GERARD H. CAYE, Respondent.

No. 3573

March 19, 1949.                 203 P.2d 1013.

*Clel Georgetta,* of Reno, for Appellant.

*Joseph P. Haller,* of Reno, for Respondent.

## OPINION

*Per Curiam:*

The lower court granted the plaintiff husband a decree of divorce on the ground of three years' separation of the parties as against the wife's defense and against her cross-complaint for a decree of separate

maintenance. She has appealed and has filed her record on appeal herein and now asks this court for an allowance to her of an attorney fee of $500, cost of undertaking on appeal in the sum of $10, transcript in the sum of $201.60, and other record on appeal in the sum of $54.90. The undertaking on appeal has already been secured by the appellant wife and she has been able to file herein the transcript and other record. Accordingly no allowance may be made for such items. Cunningham v. Cunningham, 60 Nev. 191, 200, 102 P.2d 94, 105 P.2d 398; Afriat v. Afriat, 61 Nev. 321, 328, 117 P.2d 83, 119 P.2d 883.

█ The law as to the granting of allowances on appeal is well settled in this state and need not be discussed.[1] The cases cited in the footnote and others in this state cover a variety of situations, and include cases in which the unsuccessful husband in the court below was the appellant as well as those in which the unsuccessful wife appealed.

In the instant case the wife resided in New York and the trial court allowed her $242.75 travel expense, $20 expense enroute to Reno, $280 for four weeks living expense at Reno, a preliminary attorney fee of $150, and an additional attorney fee of $350, court costs in the sum of $10, $50 for her return expense to New York, and permanent alimony in the sum of $60 per week. This alimony has been paid to date. The items noted were allowed for the defense of the action in the district court, which court denied appellant's motion for further allowances to perfect her appeal.

Appellant's affidavit supporting her motion shows

[1] Lake v. Lake, 16 Nev. 363; Buehler v. Buehler, 38 Nev. 500, 151 P. 44; Hannah v. Hannah, 57 Nev. 239, 62 P.2d 696; Wallman v. Wallman, 48 Nev. 239, 229 P. 1, 35 A.L.R. 1096; Herrick v. Herrick, 54 Nev. 323, 15 P.2d 681; Jeffers v. Jeffers, 55 Nev. 69, 25 P.2d 556; Lamb v. Lamb, 55 Nev. 437, 38 P.2d 659; Cunningham v. Cunningham, 60 Nev. 191, 192, 102 P.2d 94, 105 P.2d 398; Dirks v. Dirks, 61 Nev. 267, 125 P.2d 305; McLaughlin v. McLaughlin, 48 Nev. 153, 228 P. 305, 238 P. 402, 240 P. 1115; Ormachea v. Ormachea, 66 Nev. 67, 203 P.2d 614.

that the decree was made September 18, 1948, and motion for new trial was denied October 28, 1948. Appellant perfected her appeal November 9, 1948, and filed her record on appeal herein January 26, 1949. In addition to the $60 weekly alimony being paid by respondent, appellant earns $40 a week, which gives her an aggregate income of something over $400 a month. She alleges that she is without suitable clothes and has been compelled to borrow money for living expenses and is indebted in the sum of $600, which she has been unable to repay; that respondent is well able to defray her expense of appeal; that she has no money to pay her attorney.

Respondent's affidavit recites that he is employed by the city engineer's office at Reno and that his take home pay after deductions is $225 per month and that to augment his income he works at night as a bartender on Friday and Saturday nights, for which he receives additional income of $73.75 per month, making his aggregate income from all sources $298.75 per month, and that he has no other source of income or other property; that he formerly owned certain stocks and bonds which he was compelled to sell whose proceeds were used in part to comply with orders of allowances made by the district court; that he had a $690 balance of such proceeds which, however, are now under attachment by appellant in a separate cause of action. The oral argument indicated that this action was for recovery of unpaid balances due under a prior agreement entered into by the parties.

Both parties to the proceeding made reference to the transcript on appeal, a material part of which is devoted to an examination of a stock interest which appellant claimed to be owned by respondent in Caye Construction Company, a corporation of $3,000,000 assets and possessing at various recent times a working capital of $1,000,000. Respondent's affidavit recites that he has

no interest in this corporation. It is apparent, however, that during a considerable portion of the marital life of the parties they lived in a comparative affluence on part of the earnings of this corporation, the majority of whose stock was owned by respondent's father.

Respondent contends that appellant's appeal is prosecuted in spite and for the purpose of harassing respondent; that there is a presumption of the validity of the judgment and of the proper exercise by the trial court of its discretion in the granting of a divorce on the grounds of three years' separation without cohabitation, and that in consideration of the appellant's alleged superior financial position, no sums whatsoever should be allowed.

The learned district judge in announcing his decision said:

"I am compelled to do something in this case that I think all judges in this State refrain from doing except in extraordinary cases. The defendant in this case rests on her complaint for the charges alleged therein and asks for separate maintenance.

"During the many years of my practice, and the few years that I have acted as judge, I have learned that a separate maintenance decree never settles anything, and while the plaintiff and the defendant are the paramount individuals involved in this matter, society should have a voice, and even so far as the plaintiff and defendant are concerned they are apparently not fully conversant with the future prospects. I think a decree of separate maintenance would lead the plaintiff to complete degradation. A decree of separate maintenance in favor of the defendant would prevent her in the near or any future time until the decree was set aside from finding another home for herself where the happiness which she has not had may be found. At the present time I think I can appreciate the feeling of the defendant in her prayer for relief, but it would be a menace

to both of the parties as well as a serious menace to good society. For that reason, I feel constrained to render a divorce and the Court will decree a divorce to plaintiff on the ground of three years separation, and the Court will direct that plaintiff pay to defendant for her support and maintenance the sum of Sixty Dollars a week during her lifetime or until she shall remarry, and the Court feels that the plaintiff should pay the costs of this action."

"* * * (to the plaintiff) This Court is still in session, Mr. Caye, and the Court couldn't help but observe your smirking countenance at the Court's decision. I have nothing to do with your future life but if your future life is going to be what your parents probably anticipate, there is going to be quite a change in your moral conduct. I am frank to say that if your wife had asked for a decree of divorce I would have given it to her on nearly any grounds in her complaint. The exhibits that you were responsible for having come into this Court disclose that your conduct toward your wife has been reprehensible. Outwardly, it may have met the military requirement but otherwise it was reprehensible. I wouldn't have said that but your smirking smile when you looked up indicated to me that you had the same contempt for this Court that you have had for your marital obligations."

█ The exhibits referred to by the court were numerous love letters to respondent by another woman, and the "reprehensible conduct" referred to by the court had apparent reference to the respondent's frank admissions that he had fallen in love with another woman and desired a divorce. It is further indicated that appellant contends that the period of separation relied upon by respondent for his cause of action was caused solely by his services in the armed forces, a situation beyond the control of either of the parties and one which is contended not to be within the contemplation of the statute. Under these circumstances we cannot say that the appeal is not taken in good faith.

It is ordered that respondent pay to appellant's attorney the sum of $150, and appellant's motion is granted pro tanto. Respondent requests that the attachment of the sum of $690 hereinabove referred to be ordered released by this court to such extent as to permit him to pay the attorney fee out of such attached fund, but it is evident that the jurisdiction of this court has not been properly invoked for the purpose of interfering in any way in the attachment suit. The $60 weekly alimony payments being made under the judgment of the district court are in no way affected by this order. The court will feel free to make other and additional orders in its disposition of the appeal on the merits. The appeal will stand in abeyance until payment by respondent of the attorney fee herein ordered, unless the appellant shall voluntarily elect to proceed despite any failure of compliance. Each party will pay its own costs on this motion.

BADT, and EATHER, JJ., concur.

HORSEY, C. J., did not participate in the foregoing.

## ON THE MERITS

November 2, 1949.                    211 P.2d 252.

*Clel Georgetta* and *Howard W. Babcock,* both of Reno, for Appellant.

*Joseph P. Haller,* of Reno, for Respondent.

## OPINION

By the Court, WINES, District Judge:

Respondent instituted suit against appellant in the District Court of the Second Judicial District, in and for the County of Washoe, to obtain a decree dissolving the bonds of matrimony. Appellant has appealed from an adverse judgment and from an order denying her motion for a new trial.

The respondent, in his complaint filed on March 8, 1948, alleged that "since the marriage plaintiff and defendant have lived separate and apart for more than three consecutive years, without cohabitation, immediately preceding the commencement of this action." This the appellant denied in her answer.

The evidence establishes that respondent and appellant were married in Detroit, Michigan, on the 30th day

of April 1937, and lived togther for a period of approximately six years. During the major part of that time the husband was employed by the Caye Construction Company. The husband entered the United States Navy in June 1943, and respondent and appellant continued to live together as man and wife until August 1943, when the husband was sent to an over-seas station in Trinidad. After he left the United States, the appellant returned to reside at the home of the parties, and remained there until November 1943, when she moved to Washington, D. C., to work for the United States government.

After the respondent had been stationed in Trinidad for approximately a year, he returned to the United States in August of 1944, and was at that time given leave for twenty to thirty days. After this leave the husband was sent to the Naval Station at Norfolk, Virginia, for re-assignment, and while there received orders transfering him to duty in the Pacific area. This occurred early in the month of November 1944. Before reporting to his new assignment in the Pacific area, the husband was given several days' leave. It is uncontradicted that while stationed at Norfolk, Virginia, the respondent wrote his wife a letter stating that he desired a divorce. The testimony of the parties is in conflict as to whether his attitude persisted after his re-assignment and during the few days' leave before reporting for duty in the Pacific area. Briefly, it was the testimony of the respondent that he continued to impress upon the appellant his desire for a divorce, and that certain preliminary arrangements were made with a firm of attorneys. It was the appellant's testimony that prior to his departure for the Pacific, the parties were reconciled and that, in fact, no separation occurred until the respondent's return from the Pacific area about a year later.

The appellant has assigned as error the granting of

a decree of divorce upon the ground alleged in respondent's complaint. The appellant maintains that for the period of one year, while respondent was on duty with the United States Navy in the Pacific, the parties were compelled to live apart. This statement of the assignment assumes that the respondent and appellant had not separated prior to respondent's departure for the Pacfic area. But if it was unnecessary under the statute to prove a separation occurred prior to respondent's reporting for duty in the Pacific area, we can dispose of the question by ascertaining whether the prescribed period elapsed. Thus for the first time in this court it has become necessary to construe the statute providing for this ground for divorce, as to that point.

Appellant's interpretation of the statute providing for this cause for divorce (State.1931, c. 111, p. 180, as amended, Stats.1939, c. 23, p. 16) is that to make out a case under the statute the plaintiff, in addition to the other proof required by the statute, must show that the separation of the parties resulted from the voluntary act of the parties, with the intent to bring to an end the marital relation. Appellant proposes this construction of the statute as preferable to the view that the trial judge may grant a divorce upon this ground when a showing has been made that the parties lived apart for the prescribed length of time, and without taking into consideration the cause of their so living apart. In arguing the question, the parties, and we at all times, assume that the prescribed period of three consecutive years has elapsed, and that the trial judge has exercised his discretion in determining whether the best interests of society and the parties will be served by granting a divorce.

■■ We agree with the appellant's interpretation of the statute to the effect that to make out a case for a divorce upon this ground the separation must result from the voluntary and intentional act of at least one

of the parties. The separation may result from the refusal of one of the parties to live with the other, although such separation need not necessarily be with the intention to bring the marriage to an end by a divorce.

The parties must live apart for the prescribed period as the consequence of a separation. The fact that one of the parties has been obliged by his business, or compelled by his government because of military duty, or, for some other reason, to live apart from his spouse for the required period of time does not entitle him to any relief under our statute. This circumstance does not result in the separation of the parties as we define it, unless such business or obligation to the government is undertaken with the avowed purpose of separating from a spouse. The verb "to separate" means to part from each other. The status exists whenever the marital association is severed or when married persons intend to live apart because of their mutual purpose to do so, or because one of the parties, with or without the acquiescence of the other, intends to disrupt the marital relationship. One does not "separate" from his spouse, in the sense of disrupting the marriage, by being called to duty in the armed forces, or by being called away on business.

We think this interpretation conforms with what has heretofore been expressed by this court as the purpose and policy of the statute. Herrick v. Herrick, 55 Nev. 59, 25 P.2d 378; George v. George, 56 Nev. 12, 41 P.2d 1059, 97 A.L.R. 983. It is also in accord with the only statement on the point which we have been able to find in a sister jurisdiction having a similar statute. Otis v. Bahan, 209 La. 1082, 26 So. 2d 146, 166 A.L.R. 494.

This result has been implied by this court in the case of George v. George, supra, 56 Nev. at page 17, 41 P.2d at page 1060, 97 A.L.R. 983, where the court approved the following statement: " 'It is evident that the conjugal life and the family life of the parties are permanently disrupted. There is no inclination for and no

prospect of a reconciliation. Nothing is left of the marriage relation but the legal tie.'" It is manifest that there can be no reconciliation unless there has been disagreement and separation.

Appellant argues that if we accept her view of the statute, on the point just discussed, then respondent's complaint should be dismissed. It is asserted that the proof shows that for the first year respondent and appellant were living apart, the respondent was away from home on duty with the United States Navy. The respondent contends, on the other hand, that the evidence shows that in the brief interval he was at home on leave, and before his departure for duty in the South Pacific, the parties "separated," that respondent made it clear to appellant that he intended and contemplated a divorce.

■ If this is simply a matter of resolving a conflict of evidence on a fact, material to the issues, we would refer the appellant to the rule that conclusions reached as to the facts by the trial court upon conflicting testimony are conclusive upon this court on appeal. Cut-Rate Drug Co. v. Scott & Gilbert Co., 54 Nev. 407, 20 P. 2d 651; Ward v. Scheeline Banking & Trust Co., 54 Nev. 442, 22 P.2d 358; Butzbach v. Siri et al., 53 Nev. 453, P.2d 533. The appellant insists, however, that on her motion to modify the findings of fact and conclusions of law, the trial court was specifically requested to make a finding as to whether there was voluntary separation in the year 1944, or whether the parties lived apart for a year as a result of respondent's being called away on duty.

We have already noted that the respondent stated his cause of action in the words of the statute and in her answer the appellant denied this allegation. The finding of the court on this point reads: "That since said marriage plaintiff and defendant have, for a period of more than three consecutive years immediately preceding the filing of the complaint, which is dated March 8, 1948, lived separate and apart without cohabitation. This

Court finds that said plaintiff and defendant have not cohabited, nor have they lived together under the same roof, nor have they been together as husband and wife, for a period of more than three consecutive years immediately preceding the filing of the plaintiff's complaint, namely, since the month of November, 1944; and that there is no advantage in continuing this marriage any further; that nothing is left of the marriage relationship but the legal ties. The conduct of the parties, by living separate and apart for more than three consecutive years without cohabitation, has made it impossible for them to live together in happiness, and the best interest of the parties and the state is promoted by granting of a divorce. The family life of the parties has been permanently disrupted; there is no prospect of a reconciliation; and there is no probability of their living together in such manner as to be to their best interest and the best interest of society."

When a party to an action proposes that the court make a finding on a fact such as this, his request must be made in the manner prescribed by section 9385.65, 1931–1941 Supp. In this instance the appellant protests that the findings are insufficient to support the judgment and decree, because it nowhere appears that the court made a finding that there was a voluntary separation in 1944. Yet we have examined the appellant's proposed findings and proposed modification of respondent's findings and cannot find where in accordance with the statute such a deficiency, if any there is, was called to the court's attention. It is true the appellant noticed a motion to modify findings of fact and therein in at least sixteen instances averred the findings were deficient. In not one of these instances has the appellant suggested that the findings were such as would not support a judgment because of omission of a material fact. In every instance, on the contrary, the appellant alleges the findings are deficient because the court failed to find facts favorable to appellant's case.

It is the duty of this court to presume that the

findings of the lower court have been such as will support the judgment. Edwards v. Jones, 49 Nev. 342, 246 P. 688. We are satisfied that the findings do support the judgment. To be consistent with our expression above that to separate means more than to live apart, we must hold that in the finding of the court that "for a period of more than three consecutive years immediately preceding the filing of the complaint, which is dated March 8, 1948, lived separate and apart without cohabitation," implies a voluntary act of at least one of of the parties. We find further support of this view in the expression, "the conduct of the parties living separate and apart," and in this expression, "There is no prospect of reconciliation," We hold, therefore that not only did the appellant fail to make this point to the trial court in the manner prescribed by statute, but that in fact there is language which clearly indicates the court made a finding that the parties separated prior to respondent's departure for the Pacific area on military duty.

The appellant's next assignment of error is that the court was in error in refusing appellant's prayer for separate maintenance in view of respondent's failure to sustain his cause of action. Appellant admits that this assignment is based upon the assumption that the respondent failed to establish his cause of action. Thus, we have already disposed of this assignment of error.

The next assignment is that the court committed error in admitting into evidence, over proper objection, the affidavit of Edna C. Tourjee, for the purpose of establishing that the respondent was no longer the owner of certain stock. This affidavit had been introduced on a motion for allowances, attorney's fees and costs, and was, therefore, an ex parte affidavit. Issues had been joined by the pleadings as to whether the respondent was, or was not, the owner of said stock.

We agree with the appellant that an ex parte affidavit is not competent as evidence if it is offered for the purpose of proving the existence of the facts it recites,

in a trial upon the merits of the cause. It is, as appellant states, a basic rule of evidence that except in special proceedings, provided for by statute or rule of the court, relevent and material facts, if established by testimony, must be .proved by testimony given in open court, or by deposition taken so that in any event the other party is accorded the opportunity to cross-examine the witness. Judd v. Letts, 158 Cal. 359, 111 P. 12, 41 L.R.A.,N.S., 156; Graham et ux. v. Smart et al., 42 Wash. 205, 84 P. 824; 2 C.J.S., affidavits, sec. 28 (2), page 985.

■■ The appellant has not satisfied us, however, that this error had such a prejudicial effect as to require reversal. Where incompetent evidence is admitted in a trial of the cause by a court sitting without a jury, reversal is only warranted when it is apparent from the record that competent evidence was insufficient to support the judgment, or, when it is affirmatively shown that the improper evidence affected the result. Rehling v. Brainard, 38 Nev. 16, 144 P. 167, Ann.Cas.1917C, 656.

The appellant has not pointed out to us, and an examination of the transcript does not reveal, the manner in which this affidavit affected the result. The trial court, in ruling on the objection, pointed out that everything set forth in the affidavit was already in evidence, except one fact which we do not find material to the issue. We go further and state that the facts set out in the affidavit were testified to by the respondent, and his testimony was not discredited by cross-examination or contradicted by other competent evidence.

■ A review of all of the briefs and the oral arguments in the appeal make it clear that the entire matter (concluding, as we have, that in order to start the three year statute running, there must be a separation in the sense of a disruption of the marriage relationship through the intentional act of at least one of the parties) turns upon the factual determination of what occurred at and about the time of the separation. Despite the

bitter and perhaps justified denunciation by appellant of respondent's testimony, it does not lie with us to say that the trial court should have accepted the evidence adduced by appellant.  In this connection appellant contends that the trial court did not necessarily accept the testimony of respondent, for the reason that the trial court's theory of the law was that three years' separation authorized a decree of divorce in the court's discretion despite the fact that the first year's separation of such three years was without any intention on the part of either party to disrupt their relationship.  We do not, however, find this contention borne out by the record.

As all assignments of error have been dealt with specifically or covered by this court in this opinion, the order should be that the judgment and decree, and the order denying the new trial be affirmed, and that the respondent pay all costs not heretofore ordered paid by him.

HORSEY, C. J., and BADT, J., concur.

EATHER, J., being absent on account of illness, the Governor designated Hon. TAYLOR H. WINES, Judge of the Fourth Judicial District, to sit in his place.